UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LEAFGUARD OF KENTUCKIANA, INC., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 15-237-DCR |
| V. | ) ) | |
| LEAFGUARD OF KENTUCKY, LLC, et al., | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

On October 9, 2015, the Court granted Defendant Englert, Inc.'s motion to compel arbitration. [Record No. 35]  The Court also stayed the plaintiff's claims against Englert pending the outcome of arbitration.  *Id.*  This matter is currently pending for consideration of the plaintiff's motion for reconsideration of that decision.   [Record No. 37]   Plaintiff LeafGuard of Kentuckiana, Inc. ("Kentuckiana") requests that this Court (i) correct alleged factual errors in its October 9th opinion and (ii) completely stay the case, including the non-arbitrable claims between Kentuckiana, Defendant LeafGuard of Kentucky, LLC ("LeafGuard of Kentucky"), and Defendant John Chambers ("Chambers").  *Id.*  Because the plaintiff has failed to demonstrate that the Court's prior opinion contained any substantive mistakes of law or fact, the motion for reconsideration will be denied.

Alternatively, Kentuckiana requests that the Court order the parties to exchange discovery.  *Id.*  Kentuckiana has also failed to establish that it is entitled to further discovery. As a result, the alternate request also will be denied.

## I.

Defendant Englert, Inc. manufactures and sells a patented leaf-rejecting, seamless gutter system known as the "Englert LeafGuard Gutter System."  In 2003, Kentuckiana and Englert entered into a Distributor Agreement whereby the parties agreed that Kentuckiana would sell and install Englert's gutter system in Kentucky and Southern Indiana.  [Record No. 1-1, pp. 19-47]  In 2014, Englert began to express concern regarding Kentuckiana's failure to meet its annual sales target and pay royalties as required by their agreement. [Record No. 15, Exhibits 5, 7, and 9]  In January of 2015, John Conley, Kentuckiana's owner and operator, offered to sell Kentuckiana to Chambers, LeafGuard of Kentucky's owner and operator.   [Record No. 39-1, p. 80]   LeafGuard of Kentucky already held a separate franchise, allowing it to sell Englert's gutter system in other territories.  Kentuckiana and LeafGuard of Kentucky prepared a Purchase Agreement for the sale of all of Kentuckiana's assets to LeafGuard of Kentucky.  [Record No. 1-1, pp. 48-63]  However, when Englert refused to consent to the terms of the sale outlined in the Purchase Agreement, Chambers notified Conley's attorney that he no longer wished to purchase Kentuckiana.  [Record No. 1-1, p. 64]   Englert subsequently declared Kentuckiana in default of the Distributor Agreement and terminated the contract.  [Record No. 15, Exhibit 43]

On August 4, 2015, Kentuckiana filed this action against Englert, Chambers, and LeafGuard of Kentucky in Fayette Circuit Court.  [Record No. 1-1, pp. 1-18]  In its Complaint, Kentuckiana alleges that Englert breached the Distributor Agreement, breached its duty of good faith and fair dealing, and tortiously interfered with Kentuckiana's and LeafGuard of Kentucky's contractual relationship.  *Id.*  Kentuckiana also claims that

Chambers and LeafGuard of Kentucky breached the Purchase Agreement. *Id.* On August 14, 2015, the defendants removed the case to this Court. [Record No. 1] The same day, Englert moved to compel arbitration based on an arbitration clause contained in the Distributor Agreement. [Record No. 4] Englert also moved to stay the case while Kentuckiana and Englert engaged in arbitration. *Id.* While Kentuckiana opposed arbitration, it agreed that the entire case, including non-arbitrable claims, should be stayed pending the outcome of any Court-ordered arbitration. [Record No. 26, pp. 12-14] Conversely, Chambers and LeafGuard of Kentucky argued that Kentuckiana's claim against it and its counterclaim against Kentuckiana should not be stayed. [Record No. 25, pp. 2-3]

On August 25, 2015, the Court held a hearing on Englert's motion to compel. [Record No. 14] During the hearing, John Conley and several other witnesses testified, and Kentuckiana submitted over 200 pages of exhibits regarding the controversy. [Record No. 15] On October 9, 2015, the Court granted Englert's motion to compel arbitration. [Record No. 35] However, the Court only stayed those claims that were subject to arbitration (*i.e.* Kentuckiana's claims against Englert). *Id.* The Court declined to stay the non-arbitrable claims between LeafGuard of Kentucky, Chambers, and Kentuckiana. *Id.* On October 30, 2015, Kentuckiana filed the present motion to reconsider based on Rule 60(b)(1) of the Federal Rules of Civil Procedure. [Record No. 37]

## II.

Under Rule 60(b)(1), the court may grant a party relief based on "mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1). Thus, Rule 60(b)(1) allows for relief where "the judge has made a substantive mistake of law or fact in the final judgment or order." *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002).

While Kentuckiana claims that the October 9th opinion contains a long list of factual inaccuracies, it has not shown that any of those alleged errors were substantive. Furthermore, Kentuckiana has failed to demonstrate that the Court's opinion contained any substantive mistakes of law.   In short, its motion for reconsideration simply expresses disagreement with the Court's decision, treating this Court's October 9th opinion as a mere draft instead of a final order.   Kentuckiana is not entitled to relief under Rule 60(b) simply because it was not persuaded by the Court's opinion. *See Miller v. Norfolk S. Ry. Co.*, 208 F. Supp. 2d 851, 853 (N.D. Ohio 2002) (ordering sanctions based on a motion for reconsideration that "simply expressed disagreement with [the judge's] decision, and treated, in effect, [his] ruling and order as though they were an opponent's brief, the rationale of which was subject to refutation . . . .").

## III.

### A.    Alleged Factual Errors

According to Kentuckiana, the Court's October 9th Order contains a number of factual errors that prejudice the plaintiff's case.   Notably, Kentuckiana does not cite to any legal authority in this section of its brief.   Moreover, the majority of the factual findings that Kentuckiana challenges do not directly affect the arbitration or stay issues, the only issues actually decided by the Court on October 9th.   For example, Kentuckiana seeks to have a sentence stricken from the October 9th opinion which states: "[a]ware that LeafGuard of Kentuckiana could not meet Englert's demands, Conley approached Chambers regarding a possible sale of his franchise."   [Record No. 37-1, p. 4]   According to Kentuckiana, the record does not contain any evidence that Kentuckiana was incapable of meeting Englert's demands. *Id.*

But the testimony offered at the August 25th hearing undermines this criticism.  In a letter dated October 22, 2014, introduced by Kentuckiana during the hearing, Englert required Conley to cure his annual sales deficits by February of 2015 or risk termination of the Distributor Agreement.  [Record No. 15, Exhibit 5]   *Id.*  Conley testified at the hearing that the winter season was the hardest season to sell gutters.  [Record No. 39-1, pp. 64-65, 121-22]  When asked about his reaction to the October 22nd letter, Conley testified that he believed it "would be virtually impossible" to meet Englert's demands within the specified timeframe.  *Id.* at 57.  Conley's attorney, Scott Matmiller, also testified that Englert's demands were unreasonable and impossible to meet during the slow winter sales season.  *Id.* at 197-98.  In short, the record clearly establishes that Kentuckiana *was* aware that it could not meet Englert's demands.

Kentuckiana also contends that Conley did not contact Chambers because he knew Kentuckiana was failing.  [Record No. 37-1, p. 4]  Instead, he claims that he only contacted Chambers because Chambers had expressed interest in purchasing Kentuckiana's territory in the past.  *Id.*  However, the Court's opinion does not speculate about Conley's motivation for contacting Chambers.  Nor does this issue have any bearing on the arbitration or stay issues.  The Court merely observed that Conley knew Kentuckiana could not meet Englert's demands at the time it contacted Chambers.  The portion of Conley's testimony that Kentuckiana quotes in its motion for reconsideration supports this observation.  Conley explained, "[s]o in January when all this started erupting, I just – I made the call to [Chambers] and I said, would you still like to have my territory?"  *Id.* at 5.  In other words, Conley, knowing that Kentuckiana's relationship with Englert was volatile, contacted Chambers in hopes of selling the territory.

Likewise, Kentuckiana takes issue with the Court's observation that "it does not appear that Chambers was aware of the ongoing dispute involving LeafGuard of Kentuckiana and Englert, or aware of the possibility that the Plaintiff's Distributor Agreement was in danger of termination." [Record No. 37-1, p. 5] Kentuckiana argues that Conley disclosed everything when he first contacted Chambers. *Id.* at 5-6. Again, Kentuckiana challenges background information that has no bearing on the substantive issues addressed in the October 9th opinion. The sentence in question is not even definitive. It merely summarizes the Court's observations based on the testimony and exhibits offered during the hearing. It gives the reader context for Kentuckiana's various claims, but its inclusion or exclusion would not change the outcome of the Court's decision. Kentuckiana appropriately addresses this factual issue in its response to Chambers' and LeafGuard of Kentucky's motion for summary judgment. [Record No. 42] Accordingly, the factual dispute will be addressed in a separate opinion deciding that motion. But reexamining the issue based on a motion for reconsideration is unwarranted under Rule 60(b).

Kentuckiana also challenges the following sentence in the Court's October 9th opinion: "[p]roceeding on the belief that consent was required, Englert offered its conditional consent to the sale." [Record No. 37-1, p. 7-8] Kentuckiana contends that Englert's consent was not required. *Id.* at 7 n.2. This too is an attempt to preemptively argue summary judgment issues. It has nothing to do with the Court's decision to compel arbitration or stay the case. Further, this particular criticism ignores the actual text of the October 9th opinion. Since Kentuckiana informed Englert that it intended to sell its assets, Englert has taken the position that its consent was required. Whether the Distributor Agreement actually required

Englert's consent is an issue for the arbitrator to decide. Thus, the Court will not revise its opinion to reflect Kentuckiana's position on the issue.

Next, Kentuckiana questions the Court's parenthetical citations to the record. *Id.* at 8. But such petty critiques (while not unexpected) do not merit reconsideration. Citations to the record are certainly not substantive matters appropriate for a Rule 60(b) motion. In short, the record supports the Court's factual determinations. Englert eventually offered its conditional consent to the sale. [Record No. 15, Exhibit 40] Throughout the parties' lengthy negotiations, Englert's offers repeatedly hinged on Kentuckiana satisfying allegedly overdue royalties. [Record No. 15, Exhibits 35, 40] On a number of occasions, Englert also implied that it would not renew the Distributor Agreement in 2017. *Id.* That those facts could be gleaned from more than one exhibit does not materially affect the result reached by the Court in its October 9th opinion.

Kentuckiana also accuses the court of "misconstru[ing] the facts when it states: '[b]ecause the plaintiff did not accept Englert's offer or make a formal counteroffer, Englert terminated the Distributor Agreement by letter dated July 14, 2015.'" [Record No. 37-1, p. 8] Kentuckiana maintains that it did make a formal counteroffer and that Englert actually terminated the Distributor Agreement based on Kentuckiana's default, not its failure to accept Englert's offer. *Id.* at 9. Once more, the record supports the Court's recitation of the facts. By letter dated June 3, 2015, Englert set forth the terms of its conditional offer of consent. [Record No. 15, Exhibit 40] On June 18, 2015, Scott Matmiller, representing both Kentuckiana and LeafGuard of Kentucky, responded. [Record No. 15, Exhibit 41] Matmiller explained that, while his clients were not entirely agreeable to the June 3rd proposal, "they are interested in the general structure." *Id.* Matmiller then listed three parts

of the offer with which his clients were dissatisfied and indicated that he believed those issues could be negotiated.  *Id.*   By letter dated June 25, 2015, Englert characterized the June 18th letter as a rejection of Englert's original offer.  [Record No. 15, Exhibit 42]  Englert also observed that Matmiller's clients "did not set forth terms of a specific counteroffer."  *Id.* Nevertheless, the letter provides, "[y]our clients are invited to submit a counter-offer for our consideration at any time up through the expiration of the cure period specified above."  *Id.* By letter dated July 14, 2015, Englert indicated that it never received a reply from Matmiller, and "[a]ccordingly, Kentuckiana's failure to cure the events of default referenced in the Default Notice entitles Englert to terminate the Kentuckiana Agreement."  [Record No. 15, Exhibit 43]  The parties' correspondence plainly indicates that Kentuckiana might have avoided the consequences of its default if it had presented a formal counteroffer with specific terms or accepted Englert's original offer.  But when Kentuckiana failed to take either course of action, Englert terminated the Distributor Agreement as promised.

Even if the record demonstrated that Kentuckiana's version of the facts was more accurate than outlined in the Court's opinion, Kentuckiana has failed to demonstrate how such minute differences affected the substance of the Court's opinion.   Kentuckiana's concern that the October 9th opinion will prejudice it in future motion practice or during arbitration is simply unfounded.  The Court (and presumably the arbitrator) will make factual determinations based on all the evidence before them in future proceedings.

Kentuckiana does disagree with several substantive factual findings made by the Court in its prior opinion, but its critiques are meritless attempts to re-argue issues already decided by this Court.  In deciding whether to interpret the Distributor Agreement under Kentucky or New Jersey law, the Court considered which state had the most significant

relationship to the contractual dispute.  [Record No. 35, p. 11]  Because the record did not indicate where the contract was executed or negotiated, the Court considered other facts that were available, such as where the agreement was notarized. *Id.*  Kentuckiana now challenges the Court's finding that the signature page of the Distributor Agreement was notarized by a New Jersey Notary Public.  [Record No. 37-1, p. 9]  Kentuckiana argues that, "[i]n fact, the record should reflect that Englert's signature was notarized by a Notary Public in New Jersey, while the state in which John Conley's signature was notarized is unclear." *Id.*  In other words, Kentuckiana faults the Court for not explicitly stating that certain facts were unknown.

While the Court's conflict of law analysis is substantive, the notary issue is not.  The fact that Conley's signature *might have* been notarized in a state other than New Jersey does not affect the significant relationship test at all.  Conley also attempts to tip the balance in favor of Kentucky law by attaching a self-serving affidavit to his motion for reconsideration. [Record No. 39-4]  According to his affidavit, he signed the agreement in Kentucky. [Record No. 39-3]  However, Rule 60(b) only provides for relief based on "newly discovered evidence."  Fed. R. Civ. P. 60(b)(2).  Conley's affidavit obviously does not qualify as newly discovered evidence.  Instead, the affidavit contains his personal recollection of events that took place in 2003, or over ten years before the motion to compel was even filed.  Rule 60(b) does not entitle Kentuckiana to supplement the record with evidence that it simply failed to introduce during the lengthy hearing and extensive briefing on Englert's motion to compel.

When determining whether the arbitration clause was unconscionable, the Court found that "the plaintiff has not offered any proof that Englert used underhanded or improper bargaining tactics to convince Conley to sign the Distributor Agreement." [Record No. 35,

p. 15]   Not suprisingly, Kentuckiana disagrees, pointing to Conley's testimony that the agreement was a "take-it-or-leave-it" proposition.   [Record No. 37-1, p. 10]   But this argument disregards the very next paragraph of the Court's opinion which addresses and rejects Conley's "take-it-or-leave-it" argument.   [Record No. 35, p. 15]   Consequently, Kentuckiana is also not entitled to relief on this issue.

While addressing the allegations that the arbitration clause was a contract of adhesion, the Court observed that Conley is a sophisticated businessman who operates multiple businesses in the construction industry.   [Record No. 35, p. 17]   Kentuckiana contends that this statement was not true in 2003 when Conley entered the Distributor Agreement. [Record No. 37-1, p. 10]   Once more, Kentuckiana's attorney chooses to disregard relevant facts in hopes of changing the Court's mind.   The 2003 Distributor Agreement was only for an initial two-year term.   [Record No. 1-1, p. 29]   After that, the agreement automatically renewed for succeeding two-year periods unless either party decided to give advance written notice of termination.   *Id.*   In other words, every two years Conley had the option to terminate the contract.   In 2015, when the contract was renewed for a sixth term, he was operating multiple business ventures.

In summary, Kentuckiana has failed to raise any substantive errors that entitle it to relief from the Court's Order requiring it to attend arbitration.   Thus, the Court declines to alter or amend its decision regarding Englert's motion to compel.

**B.   Partial Stay**

Kentuckiana also disagrees with this Court's refusal to stay the entire case.   [Record No. 347-1, pp. 11-15]   According to Kentuckiana, all the parties agree that "the claims between Plaintiff and Defendants Chambers and LeafGuard of Kentucky are closely related

- 10 -

to, dependent upon and intertwined with the claims between Plaintiff and Englert." *Id.* at 13 (emphasis removed).   But this contention is a blatant misrepresentation of this case's procedural history.  Chambers and LeafGuard of Kentucky expressly opposed a complete stay, arguing that their claims with Kentuckiana are *not* dependent on the arbitrator's decision. [Record No. 25, pp. 3-4]  In their motion for summary judgment,[1] Chambers and LeafGuard of Kentucky claim that they are not liable for breach of the Purchase Agreement because the Purchase Agreement itself required the parties to obtain Englert's consent to the sale.  [Record No. 38]  Englert claims that it is not liable for tortious interference with a contractual relationship because its Distributor Agreement required Kentuckiana to obtain Englert's consent before any sale and Englert had the right to withhold that consent.  The consent issue under the Distributor Agreement is an issue for the arbitrator to decide.  The consent issue under the Purchase Agreement, which did not contain an arbitration clause, may be decided by this Court.  Even though the arbitrable and non-arbitrable claims are similar, the Court agrees with Chambers and LeafGuard of Kentucky that they are not inextricably intertwined or dependent upon one another.  Moreover, as the Court observed in its October 9th opinion, district courts have discretion to decide whether non-arbitrable claims should be stayed pending resolution of arbitrable claims.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23 (1983).  Thus, the Court committed no error when it exercised its discretion to grant a partial stay.

### C.    Discovery

Finally, Kentuckiana contends that the Court had no legal basis to order a partial stay permitting Chambers and LeafGuard to move forward with their summary judgment motion

---

[1]      The motion for summary judgment will be addressed through a separate opinion this date.

while preventing Kentuckiana from conducting discovery.  [Record No. 37-1, p. 12]  But there is nothing in the Courts October 9th opinion preventing Kentuckiana from engaging in discovery.  However, the Federal Rules of Civil Procedure allow parties to file motions for summary judgment at any time, so long as they do so at least thirty days before the close of discovery.  Fed. R. Civ. P. 56(b).  Kentuckiana has not provided any legal reason why Chambers and LeafGuard of Kentucky should not be allowed to proceed with their motion for summary judgment.  Furthermore, the Federal Rules of Civil Procedure do not require a Court order for parties to engage in discovery.  To some extent, the August 25th hearing provided the parties with much of the information they likely would have otherwise acquired through discovery.  Over 200 pages of documents and over 200 pages of testimony are already available.  And Kentuckiana has yet to explain in any of its pleas for discovery what it is hoping to discover.  Because the Court is not required to order discovery generally, it will deny Kentuckiana's request for it to do so.

## IV.

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff LeafGuard of Kentuckiana, Inc.'s motion for reconsideration [Record No. 37] is **DENIED**.

This 31st day of May, 2016.



Signed By:

*Danny C. Reeves* DCR

United States District Judge