UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LEAFGUARD OF KENTUCKIANA, INC., <br><br> Plaintiff, <br><br> V. <br><br> LEAFGUARD OF KENTUCKY, LLC, et al., <br><br> Defendants. | Civil Action No. 5: 15-237-DCR <br><br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant John Chambers ("Chambers") and Defendant LeafGuard of Kentucky, LLC ("LeafGuard of Kentucky") have moved the Court to enter summary judgment in their favor. [Record No. 38]  Because a condition precedent to the Purchase Agreement at issue did not occur, both parties were excused from performance under the agreement.  Thus, Chambers and LeafGuard of Kentucky are entitled to summary judgment on the plaintiff's breach of contract claim, and LeafGuard of Kentucky is entitled to a refund of the initial payment it made on the contract, plus interest.  However, LeafGuard of Kentucky and Chambers are not entitled to summary judgment on their breach of warranty counterclaim where performance was excused under the Purchase Agreement.  Likewise, they are also not entitled to attorney's fees, costs, and expenses under the Purchase Agreement.

LeafGuard of Kentuckiana, Inc. ("Kentuckiana") has also filed a motion for leave to file a sur-reply.  [Record No. 46]  Because a sur-reply is unnecessary, that motion will be denied.

- 1 -

I.

Defendant Englert, Inc. manufactures and sells a patented leaf-rejecting, seamless gutter system known as the "Englert LeafGuard Gutter System." Kentuckiana is a closely-held Kentucky corporation with its offices located in Lexington, Kentucky. In 2003, Kentuckiana and Englert entered into a Distributor Agreement, whereby the parties agreed that Kentuckiana would sell and install Englert's gutter system in certain counties in Kentucky and Southern Indiana. [Record No. 1-1, pp. 19-47] In 2014, Englert began to express concern regarding Kentuckiana's failure to meet its annual sales target and pay royalties as required by their Distributor Agreement. [Record No. 15, Exhibits 5, 7, 9] Englert threatened to terminate the Distributor Agreement if Kentuckiana did not cure its defaults by March 30, 2015. [Record No. 15, Exhibits 5, 9]

LeafGuard of Kentucky, LLC has its principal place of business in Indianapolis, Indiana, and its sole member is John Chambers. In January of 2015, John Conley, Kentuckiana's owner and operator, offered to sell Kentuckiana to LeafGuard of Kentucky. [Record No. 39-1, p. 80] LeafGuard of Kentucky already held a separate LeafGuard franchise, allowing it to sell Englert's gutter system in other territories. Kentuckiana and LeafGuard of Kentucky drafted a Purchase Agreement for the sale of all of Kentuckiana's assets to LeafGuard of Kentucky. [Record No. 1-1, pp. 48-63]

The Purchase Agreement provided a closing date of March 12, 2015, and set the purchase price at $500,000.00. *Id.* at 48-49. According to the agreement, LeafGuard of Kentucky would make an initial payment of $50,000.00 and then pay the remaining balance in monthly installments. *Id.* at 49. The agreement specifically provides that, "[t]o the extent required by Englert, Inc. Buyer and Seller shall enter into a Transfer Agreement with

Englert." *Id.* at 50. The consent issue is further addressed by the agreement's "Conditions to Closing" section. It provides:

> Obligations of Buyer and Seller. The obligations of Buyer and Seller are subject to the approval and execution by the Closing Date of the Transfer Agreement by Seller, Buyer, and Englert. Buyer and Seller will use their best and most expeditious efforts to obtain the approval and execution of the Transfer Agreement by Englert. Pursuant to Section XIV(C) to the Seller's Distributor Agreement with Englert, Englert's consent to the sale of Seller's Business to Buyer is not required. However, pursuant to Article XIV(B) of the Seller's Distributor Agreement, Englert is entitled to exercise a right of first refusal to the proposed sale of Seller's Business to Buyer (identified below)[.] The Parties hereto acknowledge and agree that in the event Englert exercises its Right of First Refusal, this Agreement shall become null and void, the Purchase Price paid by the Buyer shall be refunded to Buyer by Seller, all conveyance of tangible and intangible assets between Buyer and Seller shall be avoided and each party returned to the position it occupied prior to execution of this Contract. Buyer and Seller will use best efforts to cooperate in such unwinding of affairs.

*Id.* at 54.

The agreement also contains a variety of warranties. The following provisions are relevant for the purposes of the motion for summary judgment:

> 8. Seller's Representations. Seller does hereby represent and warrant to Buyer the following is true and correct as of the Effective Date and will be true and correct as of the Closing:
>
> . . . .
>
> d. The Seller is the owner of the Acquired Assets by free and clear [sic] of all liabilities, obligations, liens, and encumbrances, except for the Assumed Liabilities, and any liens or encumbrances which Seller will cause to be discharged on or before Closing;
>
> . . . .
>
> l. Except as set forth in **Exhibit C**, hereto, Seller is not subject to any pending, outstanding, or, to the current actual knowledge of Seller, threatened claims, legal, administrative, or other proceedings, or suits, investigations, inquiries, complaints, notices of violation, judgments, injunctions, orders, directives, or restrictions against or involving any of the Acquired Assets,

- 3 -

> or any of Seller's officers, directors, employees, or stockholders that will have a materially adverse effect upon the Acquired Assets;

*Id.* at 50-51. Exhibit C, attached to the Purchase Agreement, simply states "None." *Id.* at 62.

Finally, the Purchase Agreement contains the following clauses regarding attorney's fees and expenses:

> 13. <u>Indemnification</u>
>    . . . .
>    b. <u>Indemnification of Buyer</u>. Seller agrees to defend, indemnify and hold Buyer and its officers, managers or members, harmless, from and against, and agrees to promptly reimburse for, any damage, loss, claim, deficiency, liability and expense ("<u>Damages</u>") incurred by Buyer, its officers, managers or members, including reasonable all [sic] settlement costs, reasonable costs, charges and expenses, including attorney's fees, expended or incurred in connection with the following:
>
>        i. The breach or material inaccuracy of any representation, warranty, covenant or agreement of any Seller contained in this Agreement; . . . .
>
> 15. <u>Miscellaneous</u>
>    . . . .
>    m. <u>Attorney's Fees</u>. Should either party employ an attorney or attorneys to enforce any of the provisions hereof, or to recover damages for the breach of this Agreement, the nonprevailing party in any final judgment agrees to pay the other party all reasonable costs, charges and expenses, including attorney's fees, expended or incurred in connection therewith. . . .

*Id.* at 54, 56-58.

The parties disagree regarding whether John Chambers, on behalf of LeafGuard of Kentucky, actually signed the agreement. The first signature page attached to the Purchase Agreement and filed with the Complaint is unsigned. *Id.* at 59. Another signature page follows several pages later. *Id.* at 63. That page appears to be signed by Chambers and Conley and contains a blank signature line for Englert. *Id.* Neither Chambers nor Conley

dated their signatures. *Id.* Chambers and LeafGuard of Kentucky maintain that the executed signature page is actually the signature page for the Transfer Agreement. [Record No. 38-1, p. 4] Nevertheless, for the purposes of this motion for summary judgment, Chambers and LeafGuard of Kentucky request that the Court accept Kentuckiana's allegation that the parties, in fact, signed the agreement. *Id.* at 2 n.1.

On March 6, 2015, the same day that Chambers and Conley executed a Letter of Intent to Purchase, Chambers wrote a check to Kentuckiana for $50,000.00. [Record No. 15, Exhibit 13, p. LK0018] On March 17, 2015, Scott Matmiller, the attorney representing Chambers, Conley, Kentuckiana, and LeafGuard of Kentucky, sent Englert's general counsel a letter informing her of Kentuckiana's intention to sell. [Record No. 15, Exhibit 25] Mattmiller enclosed the proposed transfer agreement and informed Englert that, "[i]t is anticipated the proposed sale will occur on or before March 30, 2015." *Id.*

Englert subsequently sent a letter to Chambers, informing him that LeafGuard of Kentucky's Distributor Agreement required it to obtain Englert's express written consent before acquiring the assets of another LeafGuard distributor. [Record No. 15, Exhibit 17] Englert advised that it did not consent to the sale, and that it "is not currently and will not be a party to the Transfer Agreement." *Id.* Englert also sent a letter to Kentuckiana *via* Matmiller, explicitly stating that it would not execute the transfer agreement in its present form. [Record No. 15, Exhibit 26] Englert reminded Kentuckiana that failure to cure its defaults by March 2015 would be grounds for terminating the Distributor Agreement. *Id.*

A long series of correspondence followed between Matmiller and counsel for Englert. By letter dated April 8, 2015, Englert extended Kentuckiana's "grace period" for curing its default until April 22, 2015. [Record No. 15, Exhibit 30] But the letter reiterates that

Englert "does not at this time consent to the sale of Kentuckiana's assets as proposed in your letter of March 15, 2015 nor does it consent to Chambers' purchase of Kentuckiana's assets." *Id.* In a letter dated May 4, 2015, Englert again wrote,

> Englert, Inc. . . . has taken and continues to take the position that, pursuant to the Kentuckiana Agreement, Kentuckiana may not transfer Kentuckiana's assets without the prior written consent of Englert. Furthermore, Englert has taken and continues to take the position that pursuant to the Indiana Agreement, Chambers may not purchase Kentuckiana's assets without the prior written consent of Englert.

[Record No. 15, Exhibit 35]

Finally, on June 3, 2015, Englert offered its conditional consent to the sale. [Record No. 15, Exhibit 40] Under the terms of the offer, the closing for the transaction would take place "no later than June 30, 2015." *Id.* Among other requirements, the offer demanded that Kentuckiana pay all its past due royalties plus interest before the closing date. *Id.* Again, the letter explicitly stated, "Englert will not execute the transfer agreement previously submitted by Kentuckiana and [LeafGuard of Kentucky]." *Id.*

On June 18, 2015, Matmiller responded that while his clients were not entirely agreeable to the June 3rd proposal, "they are interested in the general structure." [Record No. 15, Exhibit 41] By letter dated June 25, 2015, Englert characterized the June 18th letter as a rejection of Englert's original offer. [Record No. 15, Exhibit 42] Englert also observed that Matmiller's clients "did not set forth terms of a specific counteroffer." *Id.* Nevertheless, the letter provides, "[y]our clients are invited to submit a counter-offer for our consideration at any time up through the expiration of the cure period specified above." *Id.*

In an e-mail dated June 25, 2015, Chambers notified Matmiller and Conley that he no longer wished to pursue the purchase of Kentuckiana. [Record No. 1-1, p. 64] On July 14,

2015, Englert indicated that it never received a reply from Matmiller, and "[a]ccordingly, Kentuckiana's failure to cure the events of default referenced in the Default Notice entitles Englert to terminate the Kentuckiana Agreement." [Record No. 15, Exhibit 43]

On August 4, 2015, Kentuckiana filed this action against Englert, Chambers, and LeafGuard of Kentucky in Fayette Circuit Court. [Record No. 1-1, pp. 1-18]  Thereafter, the defendants removed the case to this Court. [Record No. 1]  Kentuckiana alleges that Englert breached the Distributor Agreement, breached its duty of good faith and fair dealing, and tortiously interfered with Kentuckiana's and LeafGuard of Kentucky's contractual relationship. *Id.*  Based on a binding arbitration clause in the Distributor Agreement, the Court granted Englert's motion to compel arbitration and stayed all of Kentuckiana's claims against Englert pending the outcome of the arbitration. [Record No. 35]

The Complaint also contains allegations that Chambers and LeafGuard of Kentucky breached the Purchase Agreement. [Record No. 1-1, pp. 8-10]  Along with their Answer, LeafGuard of Kentucky and Chambers filed a Counterclaim against Kentuckiana. [Record No. 20]  According to their Counterclaim, their obligations under the Purchase Agreement were discharged because Englert refused to approve and execute the Transfer Agreement. *Id.* at 9.  As a result, LeafGuard of Kentucky and Chambers claim that they are entitled to recovery of their $50,000.00 initial payment plus interest. *Id.* at 10.  Moreover, LeafGuard of Kentucky and Chambers contend that Kentuckiana breached the warranties and representations contained in the Purchase Agreement, entitling them to attorney's fees, costs, and expenses under the Agreement. *Id.*

LeafGuard of Kentucky and Chambers request in their motion for summary jusgment that the Court dismiss Kentuckiana's claims against them with prejudice and grant the relief that they request in their Counterclaim. [Record No. 38]

## II.

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. "A genuine issue of material fact exists when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). *See Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008). In deciding whether to grant a motion for summary judgment, the Court must view all the facts and draw all inferences from the evidence in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.

The parties do not dispute that Englert refused to give its consent to the proposed sale and sign the Transfer Agreement. However, the parties disagree regarding whether Englert's execution of the Transfer Agreement represented a condition precedent to performance under the Purchase Agreement. Kentuckiana also challenges Chambers' and LeafGuard of Kentucky's breach of warranty allegations.

A.     **Breach of Contract**

Under Kentucky law,[1] it is well settled that a party has no right to demand performance on a contract if a condition precedent has not occurred. *See Hall v. Int'l Liberty Union*, 170 S.W. 631, 633 (Ky. 1914) ("[T]he plaintiff must aver performance [of a condition precedent], or a good excuse for nonperformance, before he has, in law or equity, any right to demand performance on the part of the defendant."). A condition precedent arises when the contract makes performance dependent on an act to be performed or not to be performed by either party or a third party to the agreement. *Id. See Majors v. Hickman*, 5 Ky. (2 Bibb) 217, 218 (Ky. 1810) ("[I]t is a general rule that wherever a right or interest is to commence upon a precedent act or condition, whether the precedent act or condition be in the affirmative or negative, and whether it is to be performed by the plaintiff or defendant, or any other, the declaration must aver performance, or show a sufficient excuse for the non-performance.").

In support of their contention that Englert's consent was a condition precedent to performance, LeafGuard of Kentucky and Chambers rely primarily on the following sentence from the "Conditions to Closing" section of the Purchase Agreement: "The obligations of the Buyer and Seller are subject to the approval and execution by the Closing Date of the Transfer Agreement by Seller, Buyer, and Englert." [Record Nos. 1-1, p. 54; 38-1, p. 3] However, Kentuckiana counters that the Purchase Agreement, read as a whole, undermines

---

[1] Federal courts sitting in diversity apply the conflict of law rules of the state in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir. 1993). Kentucky generally applies its own law unless there are overwhelming interests to the contrary. *Harris Corp. v. Comair Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983). Even though none of the parties engage in a conflict of law analysis in their respective briefs, they both cite to Kentucky law to support their arguments. Additionally, the Purchase Agreement at issue was for the sale of a Kentucky business with its principal place of business located in this state. Therefore, the Court will apply Kentucky law to the substantive issues at hand.

the existence of a condition precedent. [Record No. 42, pp. 13-14] According to Kentuckiana, conflicting provisions within the Agreement create an ambiguity, requiring the Court to submit the issue to a jury. *Id.* at 14. "It is well settled that the interpretation of contracts is an issue of law for the court to decide." *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006). But, if the contract is ambiguous, "the factual question of what the parties intended is for the jury to decide." *Id.*

Kentuckiana first argues that the "Closing" section of the Purchase Agreement is inconsistent with the later "Conditions to Closing" section upon which LeafGuard of Kentucky and Chambers rely. In relevant part, the "Closing" section states, "[t]o the extent required by Englert, Inc. Buyer and Seller shall enter into a Transfer Agreement with Englert." [Record Nos. 1-1, p. 50; 42, p. 13] The Court fails to see how this provision contradicts the "Conditions to Closing" provision. Both require that the parties to the Purchase Agreement enter a Transfer Agreement with Englert. The "Closing" section merely excuses the condition precedent if Englert does not require execution of a Transfer Agreement.

Kentuckiana argues that Englert did not require execution of the Transfer Agreement. According to Kentuckiana, "[t]he parties were . . . all of the belief that Englert's consent to the sale was absolutely <u>not</u> required . . . ." [Record No. 42, pp. 13-14] The record reveals otherwise. Throughout their negotiations, Englert repeatedly informed the parties that its consent *was* required.[2] [Record Nos. 17, 26, 27, 30, 35] Kentuckiana has not shown that

---

[2] Throughout this litigation, Kentuckiana has argued that its Distributor Agreement with Englert did not require Englert's consent for the sale of Kentuckiana's assets. However, this particular issue is not currently before the Court. For the purposes of this summary judgment motion, all that matters is whether *the Purchase Agreement* required Englert's consent.

Englert ever indicated that a transfer agreement was unnecessary. At the same time, Englert unequivocally withheld its consent, openly refusing to execute the proposed Transfer Agreement. [Record Nos. 17, 26, 27, 30, 32, 40] The Purchase Agreement anticipated this exact situation, excusing the parties' performance if their franchisor and supplier opposed the deal.

Alternatively, Kentuckiana argues that the condition precedent was excused when the Purchase Agreement was not executed by the March 12, 2015 closing date. [Record No. 42, p. 13] However, LeafGuard of Kentucky and Chambers maintain that the parties did not completely close the deal on March 12th. [Record No. 43, pp. 5-6] And because the contract did not contain a "time is of the essence" clause, they argue that the closing was simply delayed until such time as the parties could obtain Englert's approval. *Id.* at 5.

"[U]nless the intention to make time the essence of the contract is clearly expressed, or necessarily implied, it will not be so regarded." *FS Invs., Inc. v. Asset Guar. Ins. Co.*, 196 F. Supp. 2d 491, 498 (E.D. Ky. 2002) (quoting *Rogers Bros. Coal Co. v. Day*, 1 S.W.2d 540, 541 (Ky. 1927)). After reviewing the Purchase Agreement in its entirety, the Court is unable to find any indication, either express or implied, that the parties intended to make time the essence. The mere fact that the contract contains a closing date does not imply that time is of the essence. *See Davis v. Lacy*, 121 F. Supp. 246, 251 (E.D. Ky. 1954) (finding that time was not of the essence even though the contract anticipated a specific closing date).

Kentuckiana has also failed to produce evidence showing that the parties viewed the deal as completed on March 12, 2015. On March 17, 2015, Matmiller, Kentuckiana's attorney, wrote to Englert's counsel that he "anticipated the proposed sale [would] occur on or before March 30, 2015[,]" thereby indicating that the sale was not yet final. [Record No.

15, Exhibit 25] In its June 3rd offer, Englert proposed that the closing occur "no later than June 30, 2015." [Record No. 15, Exhibit 40] Chambers withdrew from the deal on June 25, 2015. At that time, Englert was still refusing to execute a Transfer Agreement as the Purchase Agreement required. In fact, Englert had not even formally declined to exercise its right of first refusal, another condition under the Purchase Agreement. [Record No. 1-1, p. 54] Accordingly, LeafGuard of Kentucky and Chambers[3] are entitled to summary judgment on Kentuckiana's breach of contract claims against them.

### B. Initial Payment

Because performance on the agreement was excused, Kentuckiana has been unjustly enriched by LeafGuard of Kentucky's initial $50,000.00 payment. *See Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009) ("For a party to prevail under the theory of unjust enrichment, they must prove three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value."). Kentuckiana has not shown that LeafGuard of Kentucky received any benefit in return for its $50,000.00 payment. Therefore, Kentuckiana must return the $50,000.00 with interest at the legal rate.[4] LeafGuard of Kentucky has produced unrebutted evidence that it demanded return of the initial payment on July 15, 2015. [Record No. 38-2, pp. 4-5] Thus, the interest will begin to accrue from that date forward.

---

[3]  Kentuckiana argues that John Chambers is individually liable as a personal guarantor under the Purchase Agreement. [Record No. 42, p. 14] For the same reasons that LeafGuard of Kentucky's performance is excused under the Purchase Agreement, John Chambers is also excused from performing, to whatever extent the contract so required.

[4]  KRS § 360.010 establishes the legal rate of interest as eight percent (8%) per annum.

C.  Breach of Warranties

LeafGuard of Kentucky and Chambers also contend that they are entitled to summary judgment on their Counterclaim for Kentuckiana's alleged breach of the Purchase Agreement's warranties and representations. [Record No. 38-1, pp. 5-8] But it stands to reason that LeafGuard of Kentucky and Chambers cannot enforce warranty provisions under an agreement where they have successfully argued that performance under the agreement was excused. *See Jewell v. Blandford*, 37 Ky. (7 Dana) 472, 477 (Ky. 1838) ("[I]f one party prevent the other from performing his agreement, or fail to perform a condition precedent, he can not recover damages for non-performance by the other party."); *20th Century Coal Co. v. Taylor*, 275 S.W.2d 72, 75 (Ky. 1954) ("One party may not successfully accuse the other of failure to perform when the former does not permit performance."). LeafGuard of Kentucky and Chambers admit that the Court need not reach the breach of warranty issue if it finds failure of the condition precedent. [Record No. 43, p. 7] The Court has found that LeafGuard of Kentucky and Chambers should not be bound by the Purchase Agreement. For the Court to hold Kentuckiana liable under the same contract would be inequitable.

Even if the parties were not excused from performance under the Purchase Agreement, LeafGuard of Kentucky and Chambers are still not entitled to summary judgment on their breach of warranty counterclaim. Under the Purchase Agreement, the seller (Kentuckiana) guarantees that its assets are free and clear of all liabilities, obligations, liens, and encumbrances. [Record No. 1-1, p. 50] The seller also warrants that it is not subject to any threatened claims, complaints, notices of violation, or restrictions that would materially and adversely affect its assets. *Id.* at 51. Kentuckiana argues that the warranties are unenforceable because Conley told Chambers about the precarious relationship between

Englert and Kentuckiana. [Record No. 42, p. 15] But LeafGuard of Kentucky and Chambers counter that the parol evidence rule prevents the Court from considering extrinsic evidence. [Record No. 43, pp. 7-8]

The parol evidence rule does prevent introduction of evidence outside the Purchase Agreement for the purpose of reforming the Agreement. Where the parties to a contract memorialize their agreement in writing, "all prior negotiations and agreements are merged in the instrument, and each is bound by its terms unless his signature is obtained by fraud or the contract be reformed on the ground of fraud or mutual mistake, or the contract is illegal." *Childers & Venters, Inc. v. Sowards*, 460 S.W.2d 343, 345 (Ky. 1970). Kentuckiana has not shown (nor has it alleged) that the Purchase Agreement was illegal or subject to fraud or mutual mistake. Moreover, the Purchase Agreement contains the following merger clause:

> c. <u>Entire Agreement</u>. This written Agreement constitutes the entire and complete agreement between the parties hereto, and shall supersede all prior agreements and understandings, both written and oral, between the parties hereto with respect to the subject matter hereof. It is expressly understood that there are no verbal understandings or agreements which may change the terms, covenants and conditions herein set forth, and that no modification of this Agreement and no waiver of any of the terms and conditions shall be effective unless made in writing and duly executed by the parties hereto.

[Record No. 1-1, p. 56] Thus, the parol evidence rule *and* the plain language of the parties' agreement preclude consideration of evidence outside the contract to interpret it.

But mere proof that the express warranties were enforceable is not enough to obtain summary judgment on a breach of warranty claim. LeafGuard of Kentucky and Chambers must also show that they relied on the warranties and that the warranties thereby induced them to enter the Purchase Agreement. *See Stanley v. Day*, 215 S.W. 175, 177 (Ky. 1919) ("[O]ne of the necessary elements going to make up an express warranty, as to the condition

of the property sold, is that the vendee relied upon the truth of the representation, and was induced thereby to make a purchase.").

The question of whether LeafGuard of Kentucky and Chambers relied on the warranties constitutes a genuine dispute of material fact, preventing summary judgment under Rule 56. Chambers and Conley have presented conflicting affidavits addressing this question. Chambers admits that Conley informed him "that there were unspecified disputes between Englert, Inc. and LeafGuard of Kentuckiana, Inc. . . . ." [Record No. 38-2, p. 1] However, Chambers alleges that "Conley never disclosed to [him] that Englert had formally declared LeafGuard of Kentuckiana, Inc. to be in default of the Distributor Agreement or that it had stated an intention to terminate the Distributor Agreement." *Id.* at 1-2. On the other hand, Conley maintains that he disclosed everything to Chambers. [Record Nos. 39-1, pp. 124; 42, p. 17; 42-1] If Conley, as he contends, fully informed Chambers about Englert's threatened claims against Kentuckiana, a reasonable jury might find that Chambers did not rely on the Purchase Agreement's warranties. Regardless, Chambers and LeafGuard of Kentucky have shown that performance was excused. For that reason, they are not entitled to recover from Kentuckiana for failure to perform.

D. **Attorney's Fees, Costs, and Expenses**

The Purchase Agreement provides for recovery of attorney's fees, costs, and expenses if litigation is necessary to enforce the agreement. [Record No. 1-1, pp. 54, 58] But the same logic that precludes recovery under LeafGuard of Kentucky's and Chambers' breach of warranty theory also precludes recovery of attorney's fees, costs, and expenses. LeafGuard of Kentucky and Chambers cannot enforce an agreement against another party while opposing enforcement of the agreement against themselves.

### E. Discovery

Since the Court granted Englert's motion to compel arbitration, Kentuckiana has insisted that it is entitled to further discovery. [Record Nos. 37-1; 42, p. 2] Rule 56 provides specific procedures for non-movants to follow where further discovery may reveal facts essential to justify the non-movant's opposition. *See* Fed. R. Civ. P. 56(d) ("If a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: . . . (2) allow time to obtain affidavits or declarations or to take discovery . . . ."). Kentuckiana has not followed those procedures. Even though Kentuckiana maintains that the Court must provide it with more time for discovery, it has not offered any legal authority to support its position.

Kentuckiana has also failed to allege what information it hopes to gain from further discovery. The Court has addressed the issue more thoroughly in its corresponding opinion denying Kentuckiana's motion for reconsideration. But for purposes of this Order, Kentuckiana's general pleas for further discovery are insufficient.

### IV.

Finally and not suprisingly, by seeking leave to file a sur-reply, Kentuckiana seeks to have the last word on the summary judgment issue. [Record No. 46] Kentuckiana filed a similar motion in response to Englert's motion to compel arbitration. [Record No. 30] The local rules governing motion practice in this Court provide for the filing of a response and a reply. *See* LR 7.1. The Federal Rules of Civil Procedure also do not expressly permit the filing of sur-replies. *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014). However, "such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to

respond to the new evidence has been vitiated.'" *Id.* (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)).

In its motion for leave to file a sur-reply, Kentuckiana contends that LeafGuard of Kentucky and Chambers advanced new arguments in their reply, thereby entitling Kentuckiana to respond via a sur-reply. [Record No. 46, p. 2] Specifically, Kentuckiana argues that LeafGuard of Kentucky's and Chambers' discussion of canons of contractual construction and "time is of the essence" clauses constitute new arguments. Kentuckiana is incorrect in this regard.

In its response, Kentuckiana argued that the Court should ignore the Purchase Agreement's condition precedent because it was not fulfilled on March 12, 2015, the contract's specified closing date. [Record No. 42, p. 13] LeafGuard of Kentucky and Chambers raised the "time is of the essence" argument as rebuttal. Likewise, LeafGuard of Kentucky and Chambers discussed canons of statutory construction only after Kentuckiana argued that the Purchase Agreement was ambiguous. If the Court allowed Kentuckiana to file a sur-reply under these circumstances, non-movants would be entitled to file sur-replies every time a movant filed a substantive reply brief.

And even if a sur-reply was warranted, the arguments raised by Kentuckiana in its proposed sur-reply would not change the outcome of the summary judgment issue. As discussed above, the mere inclusion of a specific closing date does not imply that time is of the essence. Further, LeafGuard of Kentucky and Chambers are correct that courts are to give effect to the plain meaning of the words in a contract. *See Black Star Coal Corp. v. Napier*, 199 S.W.2d 449, 451 (Ky. 1947) ("Words will be construed in the sense they are employed by the parties, and unless a contrary intention appears, they will be given their

ordinary meaning."). When the Purchase Agreement is construed according to that rule, the contract clearly and unambiguously makes Englert's execution of the Transfer Agreement a condition precedent to performance. In short, Kentuckiana's sur-reply is unnecessary and will be denied.

### V.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. Defendant LeafGuard of Kentucky, LLC's and Defendant John Chambers' motion for summary judgment [Record No. 38] is **GRANTED**, in part, and **DENIED**, in part, as explained more fully above.

2. Leafguard of Kentuckiana, Inc.'s motion for leave to file a sur-reply [Record No. 46] is **DENIED**.

3. Plaintiff LeafGuard of Kentuckiana, Inc.'s claims against Defendants John Chambers and LeafGuard of Kentucky, LLC are **DISMISSED**, with prejudice.

4. By **Monday, June 13, 2016**, Plaintiff LeafGuard of Kentuckiana, Inc. **SHALL** return to Defendant LeafGuard of Kentucky, LLC's $50,000.00, together with interest at the rate of eight percent per annum from July 15, 2015, until paid.

This 31st day of May, 2016.



Signed By:
*Danny C. Reeves* DCR
United States District Judge